STATE vs. INTOXICATING LIQUORS, MICHAEL BURNS, claimant.

STATE vs. MICHAEL BURNS, common nuisance.

Kennebec.     Opinion May 29, 1890.

*Intoxicating liquors.   Constitutional law.   R. S., c. 17; c. 27.*

The undisputed facts show that the liquors which the state claims to confiscate, as being in the possession of the respondent Burns for unlawful sale, were imported by him from England, were his property, were in the original and unbroken packages, and in the same condition as when imported; and that, at the date of the seizure, he had them in his possession with the intent to sell the same only in such original and unbroken packages, and in the same condition as when imported; and had established himself in a place of business in the city of Augusta for that purpose.   The respondent contended that such possession and intent to sell was rightful under the laws of the United States.   The court below ruled and decided that it was illegal under the statutes of this state.   R. S., c. 27.

*Held,* that the decision of the supreme court of the United States in the case, *Leisy* v. *Hardin,* on full consideration settles the question, and requires this court, bound on such questions by the law as determined by that court, to reverse the rulings below and sustain the law according to the respondent's contention.

Notwithstanding the opinion of the minority of that court may commend itself to many as containing the better conclusion, obedience on the part of this court, however, is due to the judgment which prevails; not that our statute is unconstitutional, for it prohibits only the "unlawful sale" of intoxicating liquors; but that its interpretation must be constitutional.

ON EXCEPTIONS.

The first case was a libel against fifty-six cases of rum and thirteen cases of whiskey seized, at Augusta, by the sheriff of Kennebec county, and by him libelled under R. S., c. 27.   The claimant seasonably filed his claim as required by law.   The libel was filed in the municipal court of Augusta, and upon the decision of that court disallowing the claim, the case came by appeal to the superior court for Kennebec county.

At the trial in that court it was admitted that the claimant owned the liquors; that he bought them in England in May, 1887, in the original package, and imported them into this state in the original package; said liquors at the time of the seizure

were in said original packages, which said original packages, at the time of said seizure, had not been opened, but were unbroken and in the same condition as when imported as aforesaid; that he then owned the liquors and the box and bottles containing the same, having never parted with his title thereto; that the claimant's business, at the time of the importation and seizure, was that of an importer of intoxicating liquors. At the time of the seizure thereof, said liquors were kept and deposited in said Augusta by said claimant, and he, as an importer thereof, intended to sell them in the original packages in said Augusta.

The presiding judge ruled that upon the foregoing facts the claimant had no right to the possession of the liquors seized, and that the liquors were kept and deposited by the claimant for unlawful sale within this state, as alleged in the libel and monition.

Thereupon the jury rendered a verdict against the claimant, and he excepted to the ruling.

The second case was an indictment against the respondent, Burns, under R. S., c. 17, § 1, for keeping and maintaining a common nuisance. The verdict was guilty. It was not in controversy that the respondent, during the time alleged, occupied and used the building described in the indictment for the keeping and sale of intoxicating liquors. Three witnesses testified that, during the said time, they purchased from the respondent, in the building aforesaid, certain packages of intoxicating liquors. The respondent admitted the sales. It was established in defense, and the facts were not controverted, that all the intoxicating liquors, so kept and thus sold as aforesaid by the respondent, were imported from England by the respondent in the manner provided by the laws of the United States; that all the sales so made were sales of imported liquors in the original packages as imported by the respondent; that all the intoxicating liquors kept as aforesaid were imported liquors in the original packages as imported by the respondent; that no broken packages of such liquors had been kept or sold by the respondent during the time alleged; that the respondent had not, during the time alleged, kept any such packages with an intent to break them, or with any intent to sell them other than in the unbroken and original packages as

imported by him; that the respondent, during the time alleged, had made no sales of intoxicating liquors except unbroken, original packages of liquors imported by him; that the respondent, during the time alleged, had kept no intoxicating liquors except unbroken, original packages of liquors imported by him, and kept with the intention to sell the same only in the unbroken and original packages as imported.

Among other instructions the presiding justice instructed the jury as follows:

"And, therefore, I say to you as a matter of law in this case that, although you find upon the evidence introduced before you, that the defendant sold only intoxicating liquors imported by himself, and in the original packages in which they were imported, still it is in violation of the law of the state of Maine, and he had no lawful right to use the building occupied by him for that purpose, and that he is guilty of maintaining a common nuisance."

The respondent also excepted to other parts of the charge of the presiding justice and which are found in the brackets as follows:

\* \* \* It is true that the constitution of the United States has vested in Congress the power to regulate commerce with foreign nations, and it is a matter of common knowledge that Congress, at an early period in the history of the nation, enacted general statutes authorizing any person to import merchandise from a foreign country on payment of certain duties; and the defendant in this case claims that he has exercised the authority thus conferred by the statute of the United States; that he has paid for the exercise of this privilege certain duties to the United States; that in this manner he has introduced into the state of Maine certain intoxicating liquors which he claims he had a right to sell in the packages in which they were imported by him.

[Now, gentlemen, you have perceived from the language of the statute I have read to you that, in the state of Maine, importers are not excepted by the language of our law. "*No person* shall *sell any* intoxicating liquors," except for medicinal purposes as provided in our law. It does not except or exempt importers from the operation of it. But you will perceive that our legis-

lature has not presumed, for a moment, to say that no person shall import liquors into the state of Maine. It has not presumed for a moment, to interfere with the prerogative of Congress to regulate commerce in terms. It has said that "No person shall *sell*," not that no person shall *import*.]

Now, on the other hand, my attention has not been called to any act of Congress, and I assume that no act of Congress exists any where, which says that any person may sell intoxicating liquors in the state of Maine. There is no such law, and I therefore assert that there is no necessary conflict in terms between the law of Congress and the law of the state of Maine. And a question arises here, whether there is a necessary conflict in the operation of these two laws, Federal and State. It is not in controversy that the defendant is not protected by this law of Congress in selling, in his place of business in Augusta, intoxicating liquors of domestic origin. It is not claimed that he is protected in selling liquors imported by himself, otherwise than in the original packages. He is not protected in keeping the liquors in original packages with the intent to break them, and sell in any quantity less than the original package. He is not protected in selling any liquors which he might purchase of another importer; but it is claimed that he is protected in selling those, which he himself has purchased in a foreign country and himself imported, and which he sells in the original package. This is the only contention of the defendant.

[Now, while it is the prerogative of Congress thus to regulate commerce, to prescribe the regulations concerning the importation of merchandise from a foreign country, it is a universally acknowledged power inherent in the states, always possessed by the states, still retained by the states, reserved to them in the constitution, to establish, to maintain and to enforce all such laws and police regulations as they may deem essential for the preservation of the health and the morals of the people of those states, for the protection of the lives and property of the citizens, and for the maintenance of the best interests of society in those states. This is known familiarly as the police power of the states, and it has been by virtue of this so-called police power, this power to

govern persons and things within their own dominions, that from the early history of the states of this union, from colonial times, legislation has been justified and enforced respecting the traffic and excessive indulgence in intoxicating liquors. And, surely, this is no time or place to recapitulate the evils resulting from the excessive use of ardent spirits. The appalling record of vice, crime, pauperism and every form of suffering and misery, resulting from the unrestrained traffic and excessive indulgence in intoxicating liquors, you might say, would surely justify the most stringent legislation and the most vigorous enforcement of such legislation, for the suppression of such traffic. We are to assume that the legislature of Maine has acted in good faith in this matter; that in enacting this legislation and the provisions with special reference to the enforcement of it, it has sought only the welfare, the well-being of the people of the state of Maine, and has not sought in any manner to interfere with the regulations of commerce with foreign nations, or with the prerogative of Congress.

Now the question arises, whether there is any necessary conflict between this state and Federal law to which I have called your attention; whether this acknowledged power of the state thus to suppress any common nuisance within its borders, known and acknowledged to be destructive of the manhood of its people and the highest and best interests of its society, shall be absolutely surrendered, and for what? Solely in the interests of foreign commerce. For it can not be denied that, if the contention of the defendant here is correct, then this constitutional power to regulate commerce, and the laws of Congress enacted in pursuance of it, must be absolutely destructive of the whole operation of the prohibitory law of Maine. Congress has said that wines, brandy and other spirituous liquors imported in bottles, shall be packed in packages containing not less than one dozen bottles in each package, and on all such bottles shall be paid an additional duty of three cents for each bottle. This is what Congress has thus far seen fit to do in regard to this matter by virtue of this power to regulate commerce. If it can say that an original package shall consist of only twelve bottles, each of one pint,

it may say that the original packages shall consist of only one bottle of one pint, and thus in effect every importer becomes protected as a retail dealer of intoxicating liquors within the borders of Maine. Is this a necessary result? Is it a just interpretation of the constitution and laws of the country, and a salutary or wise adjustment of the respective powers of the state and nation? ＊ ＊ ＊

Sixty years ago, in the state of Maryland, there was a law requiring an importer of foreign merchandise to pay the sum of fifty dollars for a license, and a merchant was indicted and convicted under that law of Maryland for selling a package of dry goods, without having paid this license of fifty dollars. The case was carried to the supreme court of the United States, and the law of Maryland was held unconstitutional, among other reasons, as interfering with the regulation of commerce with foreign nations. And the question was there discussed, where the right of the importer, which he had acquired by paying a duty to the government for bringing goods into the country, must be regarded as terminating; when he must be deemed to have fully exercised the privilege which he paid for, after he had paid duties to the government. And it was there apparently determined that, until the goods had become mingled with the general mass of property in the country, they were protected by this law of congress, and that they might be considered as mingled with the general property if the package in which they were introduced had been broken, or if the original package had been sold to some other person; but that so long as the package remained in its original form in the hands of the importer, it was not mingled with the general mass of property and was therefore protected. But it was held that the right to sell in that original package must be considered as an ingredient of the right to import. It will be observed, however, that the question of police regulations was not involved in that case at all. There could be no suggestion that the introduction or indiscriminate and unrestricted sale of dry goods in any way affected the health or morals of the people, or was destructive of the interests of society. But it is significant that the learned chief justice Marshall, in that

case, in answering the objections raised on the other side, expressly admitted this great police power of the states to prohibit the introduction, into the state, of any article destructive of the health or the lives of its people.]

It is not in controversy here that the defendant imported the liquors sold by him, in the city of Augusta, during the time named in the indictment. He paid to the government certain duties for the privilege of importing those liquors; and when an importer has done that, he has simply paid for the privilege of selecting the port where he will introduce his goods. Every importer is presumed to consider and calculate the opportunities for finding a market in the community where he introduces his goods; he is expected to consider the tastes, the habits, moral tendencies and physical necessities of the people where he proposes to seek a market. Then when he pays this duty he simply brings his goods in search of a market, and he must, at his peril it would seem to me, determine, whether in the particular state where he brings his goods, there are police regulations deemed by the people of that state essential to the manhood and the well-being of their society which prohibit the sale of those articles and prevent him from finding a market there. He has obtained, in other words, all he has paid for when he brings the articles into the state in search of a market. The right of the importer ends where the law of self-preservation necessarily begins.

The defendant in this case saw fit to select the port of Portland in the state of Maine. He may transfer those articles from that port to another state, or to another country, without violation of the laws of the state of Maine. [He might have brought them in here for the purpose of sale to an authorized commissioner of the state of Maine if they were such pure and unadulterated liquors as are required by law. Therefore, he does acquire something without raising any conflict between these laws of the state and nation, when he pays for the privilege of bringing goods into the port of Portland ; there is no necessary conflict between the two laws.]   *   *   *

*   *   *   It is a well-recognized rule of procedure that a judge of our state court, especially at jury trials, will give validity and

force to the state law, unless it has been definitely declared by the law court of the state to be unconstitutional.   *   *   *

And, therefore, I say to you as matter of law in this case that, although you find upon the evidence introduced before you, that the defendant sold only intoxicating liquors imported by himself and in the original packages in which they were imported, still it is in violation of the law of the state of Maine, and he had no lawful right to use the building occupied by him for that purpose, and that he is guilty of maintaining a common nuisance.

*H. M. Heath, J. H. Potter*, with him, for defendant.

The right of an importer to sell in the original packages has been sustained by the court of Maine.   *State* v. *Robinson*, 49 Maine, 285; *State* v. *Blackwell*, 65 Id. 557; *State* v. *Intox. Liquors*, (Chandler case) 69 Id. 524.   Constitutional rights (U. S. Const. Art. 1, § 8, c. 3; § 10, cl. 2, and Art. 6, cl. 2), construed in *Brown* v. *Maryland*, 12 Wheat. 419, approved by a long line of decisions, and binding upon state courts.   U. S. Supreme Court cases: *New York* v. *Miln*, 11 Pet. 110; *License Cases*, 5 How. 504; *Almy* v. *California*, 24 How. 173; *Pervear* v. *Com.*, 5 Wall. 479; *Crandall* v. *Nevada*, 6 Wall. 35; *Woodruff* v. *Parham*, 8 Wall. 123; *Hinson* v. *Lott*, Id. 148; *Waring* v. *Mayor*, Id. 121; *Downham* v. *Alex. Council*, 10 Wall. 173; *Low* v. *Austin*, 13 Wall. 29; *State Tax on Gross Ry. Receipts*, 15 Wall. 284; *Welton* v. *Missouri*, 91 U. S. 275; *Henderson* v. *Mayor*, 92 U. S. 271; *R. R. Co.* v. *Husen*, 95 U. S. 465; *Beer Co.* v. *Mass.*, 97 U. S. 25; *Cook* v. *Penn.* Id. 566; *Guy* v. *Baltimore*, 100 U. S. 443; *Brown* v. *Houston*, 114 U. S. 622; *Walling* v. *Michigan*, 116 U. S. 446; *Coe* v. *Erroll*, 116 U. S. 522; *Mugler* v. *Kansas*, 123 U. S. 623; *Phila. S. S. Co.* v. *Penn.* 122 U. S. 326; *Bowman* v. *R. R. Co.*, 125 U. S. 465.

Power of congress to regulate foreign commerce is exclusive. If the importer may import he may sell free from state restrictions, whether license, tax, or police power.   *Smith* v. *Alabama*, 124 U. S. 473; *Sands* v. *Manistee, etc. Co.* 123 U. S. 288; *Robbins* v. *Shelby Co.*, 120 U. S. 489; *Morgan S. S. Co.* v. *La. Board of Health*, 118 U. S. 455; *Walling* v. *Michigan*, 116 U. S. 446;

*Brown* v. *Houston,* 114 U. S. 623 ; *Wilson* v. *McNamee,* 102 U. S. 572.

If congress has acted, then all courts agree that no state law can regulate the same matter, even under a claim of police power. The police powers of a state do not attach, until by sale or breaking, the packages have ceased to be a part of foreign commerce. The power of congress to regulate foreign commerce is exclusive whenever the subjects are national, or require a uniform system or plan of operation. This power and a co-existent power in the states to prohibit sales by importers, by tax, license or prohibition is an anomaly not permitted by the federal decisions.

State cases :   *Fisher* v. *McGirr,* 1 Gray, 1; *Erie Ry. Co.* v. *State,* 2 Vroom, (N. J.) 531 ; *State* v. *Amery,* 12 R. I. 65 ; *Hinson* v. *Lott,* 40 Ala. 123 ; *State* v. *Pratt,* 59 Vt. 590 ; *Wynehamer* v. *People,* 13 N. Y. 378 ; *Tracy* v. *Missouri,* 3 Mo. 3 ; *Crow* v. *State,* 12 Mo. 237 ; *State* v. *Shapleigh,* 27 Mo. 344 ; *State* v. *North,* Id. 464 ; *Jones* v. *Hard,* 32 Vt. 481 ; *Niles* v. *Rhodes,* 7 Mich. 384 ; *Bode* v. *State,* 7 Gill, Md. 326 ; *State* v. *Wheeler,* 25 Conn. 294 ; *State* v. *Pinckney,* 10 Rich. (S. C.) 475 ; *Daniel* v. *Trustees of Richmond,* 78 Ky. 544 ; *State* v. *Kennedy,* 19 La. Ann. 394 ; *McCreary* v. *State,* 73 Ala. 480 ; *Wynne* v. *Wright,* 1 Dev. & Batt. (N. C.) 19 ; *Sears* v. *Warren Co.,* 36 Ind. 267 ; *Santo* v. *Iowa,* 2 Iowa, 165.

States excepting, in terms, in their legislation, sales by importers in the original package :   N. H., Mass., Vt., R. I., Conn., New York, Del., Penn., Mich., Missouri, Wis., Iowa and Kansas.

Legal authors :   Story, Com. Const. (3d ed.) vol. 2, § 1072 ; 1 Kent. Com. (12th ed.)* 439 and note c.

Resume of decisions :   A statute requiring an importer to pay a license fee, before selling his imports in the original package, (*Brown* v. *Maryland,* 12 Wheat. 419,) or to pay a state tax upon liquors so held, (*Hinson* v. *Lott,* 8 Wall. 148,) or a municipal tax (*Low* v. *Austin,* 13 Wall. 29,) is a regulation of foreign commerce, and void.

A state statute discriminating against intoxicating liquors manufactured in another state or country, is an unconstitutional exercise of the police power of the state.   *Walling* v. *Michigan,* 116 U. S. 446 ; *Tiernan* v. *Rinker,* 102 U. S. 125.

But, such statute prohibiting all sales of intoxicating liquors, and excepting sales by importers in the original package, is a constitutional exercise of the police powers of the state. *Mugler* v. *Kansas*, 123 U. S. 623.

A state statute prohibiting the introduction of intoxicating liquors into the state, without a certificate that they are not intended for unlawful sale within the state, enacted as a part of a prohibitory system, is a regulation of interstate commerce, and an unconstitutional exercise of the police powers of the state. *Bowman* v. *R. R. Co.*, 125 U. S. 465.

Principles deduced as settled law: Congress has power to regulate foreign commerce. This power whether exercised or not is exclusive. No state can enact any law the effect of which is to regulate foreign commerce. Congress has regulated foreign commerce in intoxicating liquors by providing for their importation upon payment of duty. Commerce includes the sale by the importer of the import in the original package. The right to import carries with it a right of sale by the importer. To prohibit such sales would be a regulation of foreign commerce. That the prohibitory statute is called and is a police regulation is immaterial. Being, in effect, a regulation of commerce, it is void. The police powers of the state do not attach until the goods cease to be a part of foreign commerce. The sale by the importer in the original package marks the terminus of state jurisdiction. Until such sale no state can tax, prohibit, license or in any manner interfere with such sales. That the imports are intoxicating liquors in no wise changes the rule.

*L. T. Carleton*, county attorney, for the state.

PETERS, C. J. The undisputed facts in these cases show that the liquors, which the state claims to confiscate as being in the possession of the respondent Burns for unlawful sale, were imported by him from England, were his property, were in the original and unbroken packages, and in the same condition, as when imported; and that, at the date of the seizure, he had them in his possession with the intent to sell the same only in such original and unbroken packages, and in the same condition as

when imported ; and had established himself in a place of business in the city of Augusta for that purpose.

There is no doubt, that formerly it was both the judicial and legislative opinion in this state, that such liquors could be legally sold by the importer in the condition as when imported, notwithstanding any general enactments against liquor-selling in the state where sold.

In *State* v. *Robinson*, 49 Maine, 285, DAVIS, J., (in 1862) speaking for the court, said: "Upon this point, the line of division between the power of the general government and that of the state, has been settled. Under the power granted by the constitution to regulate commerce with other nations, congress may authorize a person to import intoxicating liquors, and to sell the same in the original packages. But here the power of congress ceases, and the jurisdiction of the state begins. *Brown* v. *State of Maryland*, 12 Wheat. 419. No one but the importer himself has the right to sell, except as allowed by the laws of the state ; and he can sell only in the original packages. The power of the state is plenary to regulate or prohibit all sales, except such as are thus made by the importer himself. Those who purchase from him have no such right to sell. *The License Cases*, 5 Howard, 504." Concurrence in this view will be found in other cases. *State* v. *Blackwell*, 65 Maine, 556 ; *State* v. *Intoxicating Liquors*, 69 Maine, 524. *Nisi prius* rulings to the same effect were frequently made.

The idea entertained formerly by the legislature on this subject is seen in several legislative acts.

Chapter 205 of the laws of 1846, contains the first prohibitory enactment in this state. Prior thereto different license laws had been maintained. Section 2 of that chapter is as follows: "The provisions of this act shall not extend to wine or spirituous liquors, which shall have been imported into the United States, from any foreign port or place, when not sold in less quantities than the revenue laws of the United States prescribe for the importation into this country, and delivered and carried away at one time."

The foregoing provision remained in the law until a more

intensified act was passed in 1851, in which it was substantially retained with different phraseology. The new act placed a stronger burden of proof upon a respondent, rendering him liable to punishment, for selling liquors or for having · them in his possession for sale; "unless he can show by positive proof that such liquors are of foreign production, that they have been imported under the laws of the United States, and in accordance therewith, that they are contained in the original· packages in which they were imported, and in quantities not less than the laws of the United States prescribe." The following was added to the new act, § 11, c. 211 : "But custom-house certificates of importation and proof of marks on the packages corresponding thereto shall not be received as evidence that the identical liquors contained in said packages and casks were actually imported therein."

The exemption from liability for selling imported liquors stood through different enactments until the year 1858, when it was in most part dropped from the statutes touching the sale of intoxicating liquors, there being left only the clause relating to what should not be taken as evidence that liquors were imported, the same that is now embodied in § 55, of c. 27 of our present revised statutes. Laws of 1858, c. 33, § 25.

After these decisions of the court and enactments of the legislature, so much change had been wrought in the public sentiment on this and kindred questions, that it became in the public mind a debatable point whether the rule as laid down in *Brown* v. *Maryland*, so far as affecting the sale of imported liquors in a state in which the sale of intoxicating liquors is by its laws forbidden, would on reconsideration be adhered to by the supreme court of the United States. The ruling in the present cases, in the court below, was in a measure to test the question whether the principle of the case alluded to would be sustained as applicable to the facts of the present record.

But the case of *Gus. Leisy et als.* v. *Hardin*, just decided by the supreme court of the United States on full consideration, seems to clearly settle the question, and to require us, as we are bound on such questions by the law as determined by that court,

to reverse the rulings below, and sustain the law according to the respondent's contention. The opinion of a minority of the judges sitting in that case appears to be very elaborate and exhaustive of the questions involved, and may commend itself to many as containing the better conclusion. Our obedience is due, however, to the judgment which prevails; not that our statute is unconstitutional, for it prohibits only the "unlawful sale" of intoxicating liquors; but that its interpretation must be constitutional.

*Exceptions sustained.*

WALTON, VIRGIN, LIBBEY, EMERY and FOSTER, JJ., concurred.